UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RODERICK DAMON BRIME,

Plaintiff,

v. Case No. 3:25-cv-1421-JEP-PDB

SERGEANT T. PALMER and
OFFICER RODRIGUEZ,

Defendants.

---

# ORDER

This cause is before the Court on Defendants' Motion to Dismiss the Complaint (Doc. 12) and Plaintiff's Response (Doc. 17) thereto. For the following reasons, Defendants' Motion to Dismiss will be granted and Plaintiff's Complaint will be dismissed without prejudice.

## I. Plaintiff's Complaint

Plaintiff is proceeding pro se and in forma pauperis on a Complaint for Violation of Civil Rights ("**Complaint**") against Sergeant T. Palmer and Officer Rodriguez, in their individual and official capacities. (Doc. 1). Plaintiff alleges that on July 25, 2025, at Florida State Prison ("**FSP**"), Defendants beat

and sexually assaulted him in violation of the Eighth Amendment and Florida tort law. (*Id.* at 4–7).[1]

Plaintiff describes the pertinent events as follows. On July 25, 2025, between 12 p.m. and 1 p.m., Plaintiff was found unresponsive in his close management cell. (*Id.* at 9). Defendants and Nurse Torres responded to the cell. (*Id.*). After documenting that Plaintiff had "no injuries," Nurse Torres left. (*Id.*). Defendants told Plaintiff to submit to cuffs for a cell search. (*Id.*). Plaintiff complied and was waiting to exit the cell with his back to the bars when Defendants told him to go to the back of the cell. (*Id.*). When Plaintiff complied, Defendants entered the cell and beat him for three to four minutes. (*Id.* at 5, 9–10). Plaintiff "ended up blacking out from the powerful blows and was [awakened by] being slapped and burned in the face by a wick." (*Id.* at 10). After the beating:

> 12. . . . Defendant(s) . . . pulled down Plaintiff['s] pants and boxers and stuck their fingers up [his] anus.
>
> 13. Plaintiff screamed out in pain and Defendant(s) slapped [him] and said[,] "n[****,] next time you're unresponsive[,] we're going to kill you."
>
> 14. Upon giving the cuffs up[,] Plaintiff felt a[n] extreme sharp pain in the anus[,] and it hurt[] when walking and using the restroom. Plaintiff cleaned himself and seen [sic] blood on the toilet paper. Defendant(s) didn't report the incident.

---

[1] Unless otherwise noted, all facts recited in this Order are taken from the operative Complaint's allegations and are assumed true only for purposes of adjudicating the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> 15. Around [2:45 p.m.,] Plaintiff reported the incident to Nurse McGraw and [Officer] Davis.

(*Id.* at 10–11). As relief, Plaintiff seeks declaratory relief, court costs, and compensatory and punitive damages. (*Id.* at 16–18).

## II. Defendants' Motion to Dismiss

Defendants move to dismiss the Complaint for Plaintiff's failure to properly exhaust his available administrative remedies. (Doc. 12 at 4–13). Alternatively, Defendants argue the Court should: (1) dismiss Plaintiff's state-law official-capacity claims as unauthorized by Fla. Stat. § 768.28(9)(a); (2) dismiss Plaintiff's official-capacity claims for monetary damages as barred by the Eleventh Amendment; (3) dismiss Plaintiff's request for declaratory relief; and (4) strike Plaintiff's request for punitive damages as statutorily barred. (Doc. 12 at 14–25). Because the Complaint will be dismissed on the exhaustion issue, the Court does not address Defendants' remaining arguments.

### A. Standard

The Prison Litigation Reform Act ("**PLRA**") requires an inmate challenging the conditions of his confinement to first exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Higginbottom*

*v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he plain language of [42 U.S.C. § 1997e(a)] adequately puts prisoners on notice that they must exhaust their administrative remedies before pursuing prison-related civil actions in federal court."). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, the failure to exhaust "is an affirmative defense under the PLRA," *id.*, which is properly raised in a motion to dismiss. *See Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (stating the failure to exhaust is a matter "in abatement," is properly "raised in a motion to dismiss," and must "be treated as such if raised in a motion for summary judgment"). While "the PLRA exhaustion requirement is not jurisdictional," *Woodford v. Ngo*, 548 U.S. 81, 101 (2006), "exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court." *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (unpublished but persuasive) (citing *Jones*, 549 U.S. at 211); *see also Bryant*, 530 F.3d at 1374 (stating that exhaustion is "a precondition to an adjudication on the merits"). Not only is there a mandatory exhaustion requirement, but the PLRA "requires proper exhaustion," which means that an inmate must fully and properly comply "with the system's critical procedural rules." *Woodford*, 548 U.S. at 93, 95.

The Eleventh Circuit has articulated a two-step process that district courts must employ when examining whether an inmate has exhausted his administrative remedies, explained as follows:

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d 1077, 1082 (11th Cir. 2008). First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082–83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations modified). At step two of the procedure established in *Turner*, the district court can consider facts outside the pleadings as long as the factual issues do not decide the merits of the case and the parties have had sufficient opportunity to develop the record.[2] *Bryant*, 530 F.3d at 1376.

---

[2] In an unpublished but persuasive decision, the Eleventh Circuit stated that the parties must receive notice of the opportunity to develop the record on exhaustion. *See Kinard v. Fla. Dep't of Corr.*, No. 24-10359, 2024 WL 4785003, at *6–7 (11th Cir. Nov. 14, 2024). Here, the Court notified Plaintiff that he had forty-five days to respond to any motion to dismiss. (Doc. 3 at 3). When Plaintiff responded to Defendants' Motion to Dismiss, he addressed the exhaustion argument and filed several exhibits in support of his position. (*See* Docs. 17, 17-1). Further, Plaintiff did not request additional discovery on the issue of exhaustion. Therefore, Plaintiff has received both a notice and an opportunity to develop the record on this issue.

"Although federal law sets the exhaustion requirement, state law determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). To properly exhaust administrative remedies in Florida, an inmate generally must complete a three-step sequential grievance process by filing an informal grievance, a formal grievance, and then an administrative appeal as set forth in Chapter 33-103 of the Florida Administrative Code ("**F.A.C.**"). *See* Fla. Admin. Code rr. 33-103.001, 33-103.005, 33-103.006, 33-103.007. Informal grievances typically are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden, assistant warden, or deputy warden of the institution; and administrative appeals are handled by the Office of the Secretary of the Florida Department of Corrections ("**FDOC**"). *See* Fla. Admin. Code rr. 33-103.005(1)(b), 33-103.006(1)(a), 33-103.007(1), 33-103.015(3).

Except for specific, enumerated issues, an inmate generally must initiate the grievance process by filing an informal grievance within twenty days "of when the incident or action being grieved occurred." Fla. Admin. Code r. 33-103.011(1)(a). The FDOC has fifteen days to respond to an informal grievance. Fla. Admin. Code rr. 33-103.005(4), 33-103.011(3)(a). If the informal grievance is denied, the second step of the grievance process requires an inmate to submit

a formal grievance at the institutional level within fifteen days from "[t]he date on which the informal grievance was responded to" and attach the contested informal grievance and the response thereto. Fla. Admin. Code rr. 33-103.006(2)(g), 33-103.011(1)(b). The FDOC has twenty days to respond to a formal grievance. Fla. Admin. Code rr. 33-103.006(6), 33-103.011(3)(b). Third, if the formal grievance also is denied, the inmate must appeal to the Office of the Secretary of the FDOC within fifteen days "from the date the response to the formal grievance [was] returned to the inmate" and attach the contested formal grievance and the response thereto. Fla. Admin. Code rr. 33-103.007(4)(g), 33-103.011(1)(c). The FDOC has thirty calendar days to respond to a grievance appeal. Fla. Admin. Code r. 33-103.011(3)(c). An inmate may not proceed to a subsequent step in the grievance process before receiving a response to the grievance presently under review or, if no response is given, before "expiration of [the] time limit" for the respective prison official to respond. Fla. Admin. Code r. 33-103.011(4).

An inmate may bypass the first step and, in some instances, the second step, when complaining about specific enumerated issues. *See* Fla. Admin. Code rr. 33-103.005(1), 33-103.006(3), 33-103.007(3). More specifically:

> Inmates may skip [the informal grievance] step and initiate the process at the formal institutional level for issues pertaining to the following: grievance of an emergency nature, grievance of reprisal, grievance alleging violations of the Americans with Disabilities Act, medical grievance, grievance involving gain time governed by

> rule 33-601.101, F.A.C. Incentive Gain Time, grievance challenging placement in close management or subsequent reviews, grievances regarding the return of incoming mail governed by subsection 33-210.101(14), F.A.C., grievances regarding disciplinary action (does not include corrective consultations) . . . , and grievances regarding allegations of sexual abuse as defined in subsection 33-103.002(17), F.A.C. Inmates may proceed directly to the Office of the Secretary on the following issues . . . : grievance of emergency nature, grievance of reprisal, protective management, admissible reading material, sentence structure issues (release date calculations), and inmate banking issues. Grievances alleging a violation of the Health Insurance Portability and Accountability Act (HIPAA) must be filed directly with the Office of the Secretary . . . .

Fla. Admin. Code r. 33-103.005(1). When a prisoner files a "direct grievance" with the Secretary, he must do so within fifteen days "from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-103.011(1)(d).

A grievance filed at any step of the process "may be returned to the inmate without further processing" if: it is untimely; it "addresses more than one issue or complaint"; it is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; it is "not written legibly and cannot be clearly understood"; it is a supplement to a previously-submitted grievance that has been accepted for review; it does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; it does not include the required attachments; it was not filed at the inmate's presently assigned location; it was written outside of the

boundaries of the space provided on the form; or for any of the other enumerated reasons. Fla. Admin. Code r. 33-103.014(1). When a grievance is returned to an inmate without action, the response does not constitute one "on the merits." *See id.* If the inmate does not "refile [the grievance] utilizing the proper procedure or correct the stated deficiency," Fla. Admin. Code r. 33-103.014(2), he cannot be said to have exhausted his administrative remedies in "compliance with [the] agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90; *see also Pavao*, 679 F. App'x at 825 (reasoning that plaintiff's grievances, which were "returned" for non-compliance with agency rules, were not evidence of proper exhaustion, even though plaintiff "repeatedly presented the substance of his allegations to the prison," because the FDOC "never reached the merits of [the] complaints").

A court can excuse a failure to exhaust if it determines that a prison official improperly returned an inmate's grievance without action, because the "PLRA does not 'require[ ] an inmate to grieve a breakdown in the grievance process.'" *Dimanche*, 783 F.3d at 1214 (alteration in original) (concluding that contrary to the FDOC Secretary's assessment, plaintiff's direct grievance to the Secretary, which was returned without action, met the requirements of a grievance of reprisal and was sufficient to satisfy the plaintiff's exhaustion obligations). However, when confronted with an exhaustion defense, district courts "may not engraft an unwritten 'special circumstances' exception onto

the PLRA's exhaustion requirement." *Ross v. Blake*, 578 U.S. 632, 648 (2016). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id.* Administrative remedies are "available" when they are "capable of use" or "accessible," regardless of whether they favorably resolve an inmate's complaint. *Id.* at 642–43. Administrative remedies are deemed "unavailable" only in three narrow circumstances: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the agency's rules are "so opaque" that reasonable inmates cannot navigate the process; or (3) when prison officials actively interfere with the grievance process through "machination, misrepresentation, or intimidation." *Id.* at 643–44.

**B. The Parties' Submissions**

In support of their exhaustion argument, Defendants submit: (1) the Declarations of Jeffrey R. McClellan, Assistant Warden of Programs at FSP; (2) the Declaration of Alan McManus, Chief of the Bureau of Policy Management and Inmate Appeals with the FDOC; (3) grievance logs showing the informal grievances, formal grievances, and grievance appeals that Plaintiff filed between July 25, 2025 (the date of the incident) and November 20, 2025 (the filing date of the Complaint); and (4) copies of Plaintiff's pertinent grievances, appeals, and responses thereto. (Docs. 12-1, 12-2, 12-3).

As stated in McClellan's April 10, 2026 Declaration, Plaintiff filed ten informal grievances and one formal grievance during the relevant period. (Doc. 12-2 at 1). Plaintiff's October 13, 2025 informal grievance, log # 205-2510-0307, states:

> I've recently sent a request asking for informal/formal grievance[ ] log #s I turned in and never received no response back, no copies, nothing. I've been asking for these log #s and nobody is sending these log #s. I turned in informal/formal [grievances] on [the] following dates[:] July 28, 2025, August 27, 2025, [and October 6, 2025]. I need these log #s please so I can appeal whatever ruling was made.

(Doc. 12-4 at 1). This grievance was denied the same day, as follows:

> Your request for Administrative Remedy or Appeal has been received, reviewed [and] evaluated.
>
> In accordance with Chapter 33-601.901(1)(a)1., no inmate or offender under jurisdiction of the department shall have unlimited or routine access to any information contained in the records of the department unless an exceptional need can be demonstrated. You have not demonstrated an exceptional need as defined in Florida State [sic] 945.10.3.

(Doc. 12-4 at 1). The record does not show that after the denial, Plaintiff proceeded to the second step of the grievance process.

Plaintiff's sole formal grievance, log # 2509-205-143, which was filed on September 23, 2025 and complained of "poor investigation," does not seem to pertain to the July 25, 2025 incident. (Doc. 12-2 at 4). Even assuming it did, the record does not show that after it was denied, Plaintiff proceeded to the next step of the grievance process. (*Id.*).

Plaintiff filed two grievance appeals during the relevant period, but only his September 2, 2025[3] "emergency grievance" or "belated appeal," log # 25-6-29163, is relevant here as "a second reporting of the July 25, 2025 incident." (Doc. 12-1 at 4; Doc. 17-1 at 3). In the September 2, 2025 appeal, Plaintiff stated he could not attach the response to his July 28, 2025[4] emergency grievance filed with the Warden and the Secretary, because "this institution doesn't respond to grievances and [doesn't] return them." (Doc. 17-1 at 3–4; *see also* Doc. 17 at 2–3). The appeal was received on September 8, 2025 and returned without action on September 10, 2025, with the following explanation:

> The issue of your complaint has been referred to the Office of the Inspector General for appropriate action. . . .
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location at the appropriate level in compliance with Chapter 33-103, Inmate Grievance Procedure.

(Doc. 17-1 at 5).

---

[3] This appeal was submitted on September 2, 2025, but signed on August 27, 2025. Plaintiff alleges that on August 27, 2025, he also submitted another "belated appeal" or "emergency grievance" to the Warden, accusing the Warden of never responding to his first emergency grievance submitted on July 28, 2025. (Doc. 1 at 12–13). The Court has only the handwritten "personal copy" of Plaintiff's August 27, 2025 appeal, which is not on the form and includes handwritten "sticky notes," purporting to show medical treatment Plaintiff received *after* the appeal. (Doc. 17-1 at 2). Plaintiff alleges the Warden did not respond to this appeal or to any of his informal/formal grievances. (Doc. 1 at 12; Doc. 17-1 at 4).

[4] Plaintiff allegedly filed two emergency grievances regarding the July 25, 2025 incident on July 27 and/or July 28, 2025, but neither the Warden nor the Secretary responded to those grievances. (Doc. 1 at 11–13).

With respect to Plaintiff's appeals, McManus avers as follows:

3. [Between July 25 and November 20, 2025], [the FDOC's] Central Office received two submissions from [i]nmate Brime. One grievance, log # 25-6-29163, relates to allegations of physical abuse by staff, which was returned without action and referred to the Office of the Inspector General for appropriate action.

4. This grievance, log # 25-6-29163, was returned without action because it was not submitted at the appropriate level. Inmate Brime was instructed that, if he was within the allowable time frames, he may resubmit his grievance at his current institution at the appropriate level.

5. Inmate Brime, DC #M85423, did not have any approved grievance appeals concerning abuse by staff. These were the only appeals submitted by [i]nmate Brime for that time period. This log is attached as Exhibit B.

6. After reviewing available records, it has been determined that there was no hindrance or impediment to [i]nmate Brime's utilization of the grievance procedure [at] any level. All grievance appeals were responded to and returned to him per Rule 33-103, F.A.C.

7. At [the FDOC's] Central Office, when grievances are received, a clerical staff member who does not respond to grievances, picks up the grievances from the mailroom, logs [them] into the grievance appeal system, and distributes them to staff who will respond to them. This applies to grievance appeals, direct grievances, emergency grievances, and grievances of reprisal.

8. Once the grievance appeals are responded to, they are returned to the clerical staff member who updates the appeal log, scans the appeal and response for electronic filing, and the original copy is mailed back to the inmate.

9. [The FDOC] has a specific procedure for Grievances of Reprisal pursuant to Chapter 33-103.002(9), F.A.C. A Grievance of Reprisal is "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action

> against the inmate for good faith participation in the inmate grievance procedure."
>
> 10. If inmate Brime believed his grievances or grievance appeals were being intercepted or he was otherwise being prevented from filing grievances as an act of retaliation for using the grievance procedure, then he could have filed a Grievance of Reprisal.
>
> 11. [The FDOC's] Central Office has no record of a Grievance of Reprisal from inmate Brime between July 25, 2025[] and November 20, 2025.
>
> 12. Inmates can also utilize the institution's mail procedure to send grievances to the Office of the Secretary as routine or privilege mail. Upon receipt by the [FDOC's] Central Office, the mailed grievance would be date-stamped by the [FDOC's] Inmate Grievance Appeals.

(Doc. 12-1 at 1–2).

Similarly, McClellan's April 9, 2026 Declaration states as follows:

> 2. The inmate grievance process at [FSP] is designed in such a manner that there is no hindrance nor impediment to any inmate's utilization of the grievance procedure at any level.
>
> 3. For inmates on close-management, the grievance pick-up process is as follows:
>
> 4. Every day a mailroom staff member comes around the wing with a grievance box. This box is enclosed and locked with a slot large enough to place a grievance inside.
>
> 5. If an inmate has a grievance, the inmate will hold the grievance through the flap or up to the window and when the grievance box comes to his cell, the inmate will either place the grievance into the box, or the Mailroom staff member will place the grievance into the box in view of the inmate.

> 6. The Mailroom staff member will continue to move around the wing until all grievances are received before continuing to the next wing or on to the grievance coordinator.
>
> 7. At no point can any staff member open the grievance box to remove grievances or prevent an inmate from placing a grievance into the box without being viewed on video and breaking [FDOC] policy.
>
> 8. The only person with a key who can open the grievance box is the grievance coordinator or other assigned staff member by the Warden, who would not go on the wing.
>
> 9. Once the grievance box is received, the grievance coordinator will unlock the grievance box and remove the grievances from the box, log the grievances, and send the grievances out to the appropriate respondents.

(Doc. 12-3 at 1–2).

In addition to the above-cited exhibits provided by Defendants, Plaintiff submits the following records. First, Plaintiff submits his handwritten "personal copy" of an October 3, 2025 informal grievance allegedly submitted to the Warden, which is not on the form and in which Plaintiff requested the log numbers for his informal and formal grievances submitted on July 27 and 28, and August 27, 2025. (Doc. 17 at 3, 8; Doc. 17-1 at 6). Plaintiff alleges this grievance was never processed. (Doc. 17 at 3, 8).

Next, Plaintiff submits his handwritten "personal copy" of an October 6, 2025 emergency grievance allegedly submitted to the Secretary, which is not on the form and in which Plaintiff explained that more than sixty days had passed since the filing of his grievances without receiving any responses from

the Warden. (Doc. 1 at 13; Doc. 17-1 at 7–8). Plaintiff alleges this emergency grievance was returned without action. (Doc. 17 at 3).

Plaintiff alleges that on December 11, 2025—after he filed his Complaint—he submitted an informal grievance, complaining that his numerous informal and emergency grievances submitted since July 25, 2025 were never responded to nor logged into the system. (Doc. 17 at 3–4). Plaintiff's December 11, 2025 informal grievance allegedly was denied. (*Id.*).

In addition, Plaintiff submits other grievances postdating his Complaint, including: (1) Plaintiff's December 11, 2025 belated appeal to the Secretary, log # 25-6-40231, which was received on December 15, 2025 and returned without action on December 16, 2025; (2) Plaintiff's January 5, 2026 belated appeal to the Secretary, log # 26-6-01523, which was received on January 13, 2026 and returned without action on January 15, 2026; (3) Plaintiff's January 27, 2026 PREA[5] belated appeal to the Secretary, log # 26-6-03987, which was received on February 2, 2026 and returned without action on February 3, 2026; and (4) Plaintiff's February 27, 2026 appeal to the Secretary, log # 26-6-08483, which was received on March 10, 2026 and returned without action on March 12, 2026. (Doc. 17-1 at 9–10, 12–18; *see also* Doc. 17 at 4).

[5] Prison Rape Elimination Act, 34 U.S.C. §§ 30301–30309.

### C. Analysis

Plaintiff appears to argue that although some of his grievances were "played with" to protect Defendant Palmer, who allegedly is related to Director Palmer, Plaintiff nevertheless has exhausted his administrative remedies through his emergency grievances to the Secretary. (Doc. 1 at 13, 19–20; Doc. 17 at 4–5). Accepting Plaintiff's view of the facts as true, the Court finds that dismissal for lack of exhaustion is not warranted at the first step of *Turner*. Accordingly, the Court proceeds to the second step, where the Court makes findings of fact to resolve the disputed factual issues. Based on the evidence, the Court finds that Plaintiff did not complete the administrative process before he initiated this action. Moreover, Defendants' evidence shows that the grievance process was available to Plaintiff during the relevant timeframe. (*See* Doc. 12-1 at 2 ("After reviewing available records, it has been determined that there was no hindrance or impediment to [i]nmate Brime's utilization of the grievance procedure [at] any level. All grievance appeals were responded to and returned to him per Rule 33-103, F.A.C."); Doc. 12-3 at 1 ("The inmate grievance process at [FSP] is designed in such a manner that there is no hindrance nor impediment to any inmate's utilization of the grievance procedure at any level.")). As such, the burden shifts to Plaintiff, "who, pursuant to *Turner*, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." *Geter v. Baldwin State*

*Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (quoting *Turner*, 541 F.3d at 1085). Plaintiff has not met this burden.

Plaintiff's unsubstantiated allegations that he submitted two "emergency grievances" to the Warden and the Secretary on July 27 or 28, 2025, a "belated appeal" to the Warden on August 27, 2025, and an "informal grievance" to the Warden on October 3, 2025, but did not receive responses thereto, are insufficient to establish that the grievance process was unavailable to him. (*See* Doc. 1 at 11–13; Doc. 17 at 3, 8; Doc. 17-1 at 2, 4, 6–8). Assuming Plaintiff submitted such grievances, he failed to resubmit them when he did not receive receipt numbers and failed to submit grievances of reprisal if he believed that his grievances were being intercepted.[6] *See* Fla. Admin. Code r. 33-103.013 (stating that for each grievance an inmate submits, "a computer[– ]generated receipt or part C of Form DC1-303 shall be completed and sent to the inmate" unless the grievance is returned without action). To the extent Plaintiff believed he could submit the July 2025 grievance directly to the Secretary because it was an "emergency grievance,"[7] the Secretary

[6] While an inmate is allowed to proceed to the next step after "expiration of [the] time limit" for a response, Fla. Admin. Code r. 33-103.011(4), Plaintiff allegedly never received log numbers for those grievances.

[7] Plaintiff allegedly submitted another emergency grievance to the Secretary on October 6, 2025, which allegedly was returned without action. (Doc. 1 at 13; Doc. 17 at 3; Doc. 17-1 at 7–8). There is no credible evidence that this grievance was submitted, that it was a proper emergency grievance, or that Plaintiff resubmitted it when it allegedly was returned without action.

apparently disagreed with Plaintiff's assessment and returned the appeal without action for failure to submit it at the appropriate level.[8] The record does not show that Plaintiff resubmitted it at the appropriate level.

Instead, on September 2, 2025, Plaintiff submitted another "belated appeal" to the Secretary, log # 25-6-29163, which also was returned without action for failure to submit it at the appropriate level. Again, Plaintiff did not take the necessary steps to remedy the issue. Although Plaintiff submitted an informal grievance, log # 205-2510-0307, at his institution on October 13, 2025, he did not proceed to the second step of the grievance process when his informal grievance was denied. Instead, on December 11, 2025—after filing his Complaint—Plaintiff submitted yet another "belated appeal" to the Secretary, log # 25-6-40231, which also was returned without action. Thus, as of the filing of the Complaint,[9] Plaintiff failed to take the necessary steps to properly exhaust his administrative remedies. *See Woodford*, 548 U.S. at 90; *Higginbottom*, 223 F.3d at 1261; *Pavao*, 679 F. App'x at 825.

---

[8] Likewise, to the extent Plaintiff believed that he could skip both the informal and formal steps of the grievance process because he raised allegations of sexual abuse, the F.A.C. allows inmates to skip only the informal step when bringing such allegations. *See* Fla. Admin. Code r. 33-103.005(1).

[9] Any grievances that were submitted *after* the Complaint was filed have no bearing on whether Plaintiff exhausted his available administrative remedies before initiating this action.

To the extent Plaintiff alleges that his grievances were "played with" to protect Defendant Palmer (Doc. 1 at 13, 19; Doc. 17 at 4), such conclusory allegations do not amount to the type of intimidation that would render the grievance process unavailable. The record refutes any allegation that prison officials engaged in threatening or retaliatory behavior that deterred Plaintiff from filing or refiling any of his grievances or appeals. *See Turner*, 541 F.3d at 1085 (holding that a prison official's threats of retaliation can render grievance process unavailable if: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude" from participating in the process).

The record shows that during the relevant period, Plaintiff filed ten informal grievances, one formal grievance, and two grievance appeals. (*See* Doc. 12-1 at 4; Doc. 12-2 at 3–4). Plaintiff's grievance-filing history shows that he knew how to participate in the grievance process, including how to grieve issues about the grievance process itself, and that Defendants did not make that process unavailable to him. *See Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) (noting that the district court "appropriately considered [the prisoner's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances"); *Luckey v. May*, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at

*9 (N.D. Fla. Feb. 17, 2016), *rep. & recommendation adopted*, 2016 WL 1169481 (N.D. Fla. Mar. 22, 2016) ("Plaintiff's consistent pattern of filing grievances demonstrates that he was not actually deterred from filing grievances."). In addition, the fact that the FDOC referred the subject of Plaintiff's grievances to the Office of the Inspector General[10] (*see* Doc. 17-1 at 5), further undermines any allegation that prison officials were hindering Plaintiff's grievances. *See Fleming v. Espino*, No. 3:20-cv-853-MMH-JRK, 2021 WL 5083743, at *6 (M.D. Fla. 2021) (stating that the prison officials' reporting of the plaintiff's allegations to the Office of the Inspector General undermines the plaintiff's "claim that correctional officers were lying or otherwise attempting to prevent him from submitting grievances about the alleged assault or covering it up"). Based on the foregoing, Plaintiff has not shown that the grievance process was unavailable to him. Given that Plaintiff was not excused from the PLRA's exhaustion requirement, but failed to take the

[10] Because Plaintiff's appeals were returned without action, the September 10, 2025 referral to the Office of the Inspector General did not render the PLRA's exhaustion requirement complete. *Cf. Tierney v. Hattaway*, No. 3:20cv5738/LAC/ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022) ("Given that Plaintiff's informal grievance was 'approved,' and the matter referred to the Inspector General, it would have been pointless for Plaintiff to appeal by filing a formal grievance."), *rep. & recommendation adopted*, 2023 WL 139132 (N.D. Fla. Jan. 9, 2023); *Luckey*, 2016 WL 1128426, at *11 ("Plaintiff was explicitly told twice that his issue had been referred to the Office of the Inspector General for appropriate action, that action had been initiated, and that Plaintiff could consider his appeal approved from that standpoint. . . . Plaintiff already had received the remedy he wanted—investigation—and he was not required to continue appealing his grievance.").

necessary steps to complete it, Plaintiff's Complaint will be dismissed without prejudice for failure to exhaust his administrative remedies.

## III. Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 12) is **GRANTED** to the extent Plaintiff's Complaint is **DISMISSED without prejudice** for failure to exhaust administrative remedies.

2. The **Clerk** shall enter judgment accordingly, terminate any pending motions, and close the case.

**DONE AND ORDERED** in Jacksonville, Florida, on November 20th, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-11
c:
Counsel of Record
Roderick Damon Brime, #M85423